PERICÁS, PLAINTIFF AND APPELLANT, *v.* PORTO RICO DRUG COMPANY, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Ponce in an Action for Damages.

No. 2583.—Decided November 10, 1922.

DAMAGES—PHYSICIAN'S PRESCRIPTION—SUBSTITUTION—EVIDENCE.—This is an action for damages against a druggist for the reason that the physician prescribed injections of Mulford's combined staphylococcic serobacterine to be administered to a patient and the druggist supplied Mulford's simple staph-

ylococcic serobacterine which was administered to the patient by injec-
tion, and it was alleged that the substitution without the physician's per-
mission prevented the use of the injection that would have benefited the
patient and was the cause of his death. *Held:* That the evidence having
shown that by reason of the advanced stage of the microbic infection the
injection prescribed would not have produced favorable results, the court
did not err in holding that the substitution was not the cause of the death.

The facts are stated in the opinion.

*Mr. C. Brunet* for the appellant.

*Mr. J. Tous Soto* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

Luis Pericás, a boy of about twelve years of age, arrived
at home sick in the afternoon of a Thursday in the month of
November of 1920. At noon on the following day a physician
examined him and found that he complained of acute earache
and had fever and symptoms of catarrh in the nose and
throat. His diagnosis was otitis, or inflammation of the
middle ear, and he prescribed a sedative for the ear, an
internal potion and injections of Mulford's combined staph-
ylococcic serobacterine as a prophylactic. A nurse ad-
ministered the first injection at two o'clock that afternoon.
The physician was informed that the patient was worse and
visited him again at five o'clock in the afternoon. He then
found that the patient had meningitis and ordered his im-
mediate removal to a hospital, which was done. At that
time he could not make a lumbar puncture, apparently be-
cause he had not the necessary needles, but made it on the
following day (Saturday) and ordered that the patient be
given a second injection of the prescribed prophylactic. It
was then discovered that on the day before the drug-store
had not filled the prescription accurately, but had substituted
the injection mixture by Mulford's simple staphylococcic
serobacterine and this was what had been administered to the
boy on the day before. Thereupon the physician ordered
that the remedy prescribed be procured and the drug-store
then furnished the combined remedy. An injection of this

was administered to the boy, but he died at one o'clock p. m. Later an analysis was made of the cerebro-spinal fluid extracted through the lumbar puncture made that morning.

The father of the child brought an action against the Porto Rico Drug Company, whose drug-store in Ponce had furnished the substituted injection, and claimed a certain sum of money as damages for the death of his son, alleging that by reason of the defendant's act the patient was not given the injections prescribed, thus permitting the disease to develop rapidly and preventing the administration to the patient of the medicines necessary to combat the disease. After a trial judgment was rendered dismissing the complaint on the ground that the substituted medicine did not endanger the life or health of the patient and did him no harm whatsoever, inasmuch as owing to the acuteness of the disease the microbic infection was so advanced that the administration of the medicine prescribed would not have had any favorable effect, as was the case with the substituted medicine.

An appeal having been taken from that judgment, the plaintiff alleges in his brief in support of his appeal that the conclusions of the lower court are erroneous because the theory of his complaint is that although the substituted medicine produced no effect, it prevented the administration to the patient of the medicine which would have been beneficial to him, and put his life in danger.

The appellant having admitted that the substituted medicine had no effect on the boy, the question now is whether the trial court erred in finding that owing to the advanced stage of the disease the injection prescribed would not have produced favorable results if it had been administered. On this very important point two physicians, one called by each party, testified at the trial.

The basis of the theory of the appellant is that as the combined injections prescribed contain golden staphylococci,

white staphylococci, streptococci, bacilli-coli and pneumococci, while the last three kinds of bacteria are not present in the simple injection supplied by the drug-store, and as the *post mortem* analysis of the cerebro-spinal fluid showed that the meninges were greatly infected by microbic pneumococci which caused the death, the lack of pneumococci in the injection supplied by the drug-store rendered it impossible to arrest the said infection, inasmuch as the combined staphylococcic serobacterine is prescribed as a preventive against diseases produced by any of the bacteria that it contains.

Those injections are to be administered every twenty-four hours and are labeled A, B, C and D. Each of the last three contains twice as much of the bacteria as the preceding one and their immunizing effects do not begin until twenty-four or forty-eight hours after they have been administered, although it can not be unquestionable that immunity is certain, and three or four injections are necessary to neutralize the live organisms.

The physician who attended the boy in his illness and who was called as an expert by the plaintiff, testified, among other things, that the amount of pneumococci contained in injection A of the combined staphylococcic serobacterine which he prescribed would not have been sufficient to neutralize the live organisms present in the meninges; that if the boy had been given the combined instead of the simple injection he would not have been saved, nor even if he had been given a second injection, owing to the virulence of the case, the intensity of the symptoms and their rapid development until his death; that if the combined injection had been administered before the cerebral infection, it might have had some effect; that according to the information given to him at the house when he visited the patient the second time in the afternoon, when the injection was administered the patient had the symptoms of meningitis, and

that the case could be treated only by means of the lumbar puncture and the injections. On the other hand, the medical expert called by the defendant testified, among other things, that the disease which the boy had was suppurated otitis superinducing meningitis; that injection A of the combined staphylococcic serobacterine administered a little after the physician called for the first time and a second one given twenty-four hours later could have produced no results considering the infection of the patient; that there was no other solution than to open the source of the infection; that if the injection had been administered before meningitis supervened, it might have had some preventive action, but according to the symptoms the infection of the meninges developed before the first injection was administered; that meningitis of the kind that the boy Pericás had can not be treated by means of bacteria, but it is necessary immediately to make the lumbar puncture and operate in order to discover the source of the infection, and that the use of serums means a loss of time and the death of the patient.

The testimony of these experts leads us to the conclusion that the failure to administer the combined injection to the patient when it was prescribed, because of the fact that the drug-store supplied the simple injection, was not the cause of the patient's death, considering the advanced stage of the disease; therefore, the court below did not err in finding that owing to the intensity of the microbic infection the administration of the medicine prescribed would not have produced any favorable effect.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justice Hutchison concurred.

Justices Wolf and Franco Soto took no part in the decision of this case.